In the Matter of the Claim of JAIME D. VARGAS, Respondent. METROPOLITAN CABLE COMMUNICATIONS, INC., Appellant; COMMISSIONER OF LABOR, Respondent. [795 NYS2d 144]—

Rose, J. Appeals from two decisions of the Unemployment Insurance Appeal Board, filed March 20, 2003 and October 17, 2003, which ruled that Metropolitan Cable Communications, Inc. was liable for unemployment insurance contributions based on remuneration paid to claimant and others similarly situated.

Metropolitan Cable Communications, Inc. (hereinafter MCC) provides workers to Time Warner Cable, Inc. (hereinafter TWC) to install TWC's cable lines, converters and cable boxes on the premises of TWC's customers. Claimant, a cable installer for MCC, filed for unemployment insurance benefits when he stopped receiving TWC work assignments. The Department of Labor determined, among other things, that claimant was an

employee of MCC rather than an independent contractor. Following a hearing at which only MCC's witnesses testified (hereinafter the first hearing), the Administrative Law Judge found that an employer-employee relationship had been established and upheld the Department's assessment. The Unemployment Insurance Appeal Board affirmed this decision and MCC appeals.

While preparing the record on appeal, MCC requested, and the Board granted, retranscription of the audio recording of the first hearing. MCC then pointed out numerous deficiencies in the second transcript, and applied for a new hearing. The Board reopened the case and directed a new hearing. The only witness to appear at the second hearing was MCC's vice president, John Snyder,* who had been MCC's primary witness at the first hearing. After he was reexamined regarding all aspects of the relationship between claimant, MCC and TWC, the Board again found claimant and those similarly situated to be MCC's employees. In doing so, the Board noted that it had resolved inconsistencies between the transcripts of the first and second hearings in favor of the earlier testimony. MCC again appeals.

Initially, MCC contends that the Board should not have relied upon the transcriptions of the testimony of MCC's witnesses at the first hearing. We agree. This is not a case where the second hearing merely filled certain gaps in the transcript of the first hearing. In such a case it would be appropriate for the Board to consider the original as well as the supplemental testimony (*see Matter of Palmer [Rescue Mission Alliance of Syracuse—Commissioner of Labor]*, 273 AD2d 525, 526 [2000]). Here, however, the first and second transcripts have many instances where differing transcriptions are given of the same testimony. The Board effectively recognized that there were inaccuracies and conceded the unreliability of the earlier transcripts by permitting Snyder to retestify as to the entirety of MCC's relationship with TWC and claimant. Given their unreliability, the earlier transcripts should not have been considered. Further, the Board did not identify what inconsistencies were resolved by reference to the first hearing transcripts or which of them was utilized in doing so. Thus, we cannot meaningfully review the Board's decision without limiting the record to Snyder's testimony at the second hearing.

This testimony, however, does not provide substantial evidence to support the Board's conclusion that MCC exercised sufficient control over the means used or the results produced

---

* In its brief, MCC notes that this witness's last name was erroneously reported as "Schneider" in the hearing transcripts.

by its cable installers so as to find an employer-employee relationship (*see Matter of Kearsh [Northeast Communications Contr.—Hudacs]*, 186 AD2d 970, 971 [1992], *lv denied* 81 NY2d 711 [1993]; *compare Matter of DM & M Cable Servs. [Commissioner of Labor]*, 288 AD2d 643 [2001]; *Matter of Patino [Adderley Indus.—Commissioner of Labor]*, 253 AD2d 995, 995-996 [1998], *lv dismissed* 93 NY2d 920 [1999]; *Matter of Pedraza [Cablemasters Corp.—Hartnett]*, 149 AD2d 829, 830 [1989]).

While the Board certainly had the discretion to credit or reject any portion of Snyder's testimony, it could not draw an opposite conclusion for which there is no affirmative evidence in the record (*see e.g. Matter of Knouse v Millshoe*, 260 AD2d 948, 950 [1999]; *Matter of Kubus [Ross]*, 62 AD2d 534, 535 [1978]; *Matter of Cortland-Clinton, Inc. v New York State Dept. of Health*, 59 AD2d 228, 232 [1977]). Accordingly, there is simply no evidence to support the Board's findings that claimant was required to regularly report to a supervisor employed by MCC, adhere to MCC's deadlines and submit paperwork regarding his completed work to MCC. Nor is there any evidence that MCC directed claimant to correct his work when it was found to be deficient or that claimant could not take time off without MCC's permission. To the extent that the Commissioner of Labor now argues that the Board's decision should be read to find that TWC acted as MCC's agent in assigning and supervising claimant's daily work, we note that this rationale was not invoked by the Board in its decisions and we are powerless to affirm on grounds not invoked by the agency (*see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 758 [1991]; *Matter of Fromer [Commissioner of Labor]*, 268 AD2d 707, 709 [2000]).

Mercure, J.P., Crew III, Peters and Mugglin, JJ., concur. Ordered that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.

